NO. 07-02-0129-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL D



MAY 20, 2003



______________________________




STEVIE PRESTON DEAN, APPELLANT



V.



THE STATE OF TEXAS, APPELLEE




_________________________________



FROM THE 181ST DISTRICT COURT OF POTTER COUNTY;



NO. 43,735-B; HONORABLE JOHN BOARD, JUDGE



_______________________________


`

MEMORANDUM OPINION (1)




Before QUINN and REAVIS and CAMPBELL, JJ.


 Following a plea of not guilty, appellant Stevie Preston Dean was convicted by a
jury of delivery of a controlled substance and punishment was assessed by the court at two
years confinement in a state jail facility. Presenting six issues, appellant challenges: (1)
and (2) the legal and factual sufficiency of the evidence to support his conviction where
the alleged crime could not have occurred at 908 North Washington, Amarillo, Potter
County, Texas; (3) and (4) the legal and factual sufficiency of the evidence to establish
that the crime was committed in Potter County; (5) the legal sufficiency of the evidence to
sustain the allegation of venue in Potter County; and (6) the legal sufficiency to sustain the
jury's verdict that the alleged crime occurred in Potter County. Based upon the rationale
expressed herein, we affirm.

 Appellant's challenge to the sufficiency of the evidence is limited to the question of
venue; thus, only the facts necessary to disposition of the appeal will be discussed. The
indictment alleged that appellant "in the County of Potter and State of Texas, did then and
there intentionally and knowingly deliver, by actual transfer to MARK WITTIE, a controlled
substance . . . ." The indictment did not allege that the offense occurred at a specific
address. 

 By his issues, appellant contends the State failed to prove venue. We disagree and
address the issues simultaneously. Generally, venue for a criminal prosecution is in the
county in which the offense was committed. Tex. Code Crim. Proc. Ann. art. 13.18 (Vernon
1977). A plea of not guilty puts in issue the allegations of venue and places the burden
on the State to prove venue by a preponderance of the evidence either by direct or
circumstantial evidence. Black v. State, 645 S.W.2d 789, 790 (Tex.Cr.App. 1983) (en
banc); see also Tex. Code Crim. Proc. Ann. art. 13.17 (providing that "it shall be necessary
to prove by the preponderance of the evidence that by reason of the facts in the case, the
county where such prosecution is carried on has venue"). 

 On appeal, we presume that venue was proved in the trial court unless it was
disputed at trial or the record affirmatively establishes the contrary. Tex. R. App. P.
44.2(c)(1); Sander v. State, 52 S.W.3d 909, 916 (Tex.App.-Beaumont 2001, pet. ref'd). 
Otherwise, the appellate presumption does not obtain and the evidence must show by a
preponderance that the State proved venue. Holdridge v. State, 707 S.W.2d 18, 21
(Tex.Cr.App. 1986) (en banc); see also Black, 645 S.W.2d at 791 (holding that when
venue is made an issue at trial failure to prove venue in the county of prosecution is
reversible error). 

 Agent Mark Wittie of the Panhandle Regional Narcotics Trafficking Task Force
testified that he was introduced to appellant by a confidential informant. According to
Wittie's testimony, the introduction occurred at 908 North Washington in Amarillo, Potter
County, Texas. He further testified:

 Yes, we drove to 908 North Washington in my vehicle, parked on the north
side of the house, which would be at the intersection of 9th and North
Washington. 


 After the State rested, the defense called the Chief Deputy of the Potter County Tax
Office to testify regarding the street address of 908 North Washington. During direct
examination, she testified as follows:

 Q. Were you able to bring me any information on the address at 908 North
Washington Street in Amarillo?

 A. No, sir.

 Q. Why is that?

 A. That address does not appear on our tax rolls.

 Q. Is there - would that - to appear on tax roll, would there have to be a
residence there or a building?

 A. Not necessarily. Sometimes there are addresses that are - some areas
of town don't have accurate addresses.

 Q. Okay, This is one of those cases where there is no - from your tax rolls
- there is no residence or building at 908 North Washington?

 A. Right?

 Q. And did you also check with anybody else to verify this?

 A. Yes, sir, the Potter Randall Appraisal District.


During closing argument the defense argued that the State did not prove venue because
there was no residence located at 908 North Washington. 

 The State concedes appellant disputed venue at trial by the foregoing testimony
and by his closing argument. Thus, the appellate presumption does not apply and we
must review the evidence to determine if the State met its burden of proof. See
Cunningham v. State, 848 S.W.2d 898, 902 (Tex.App.-Corpus Christ 1993, pet. ref'd)
(noting that venue was raised by the defendant during jury argument). The jury may make
reasonable inferences from the evidence to decide the issue of venue. Couchman v.
State, 3 S.W.3d 155, 161 (Tex.Cr.App.-Fort Worth 1999, pet. ref'd). Also, the evidence
is sufficient if the jury may reasonably conclude from the evidence that the offense was
committed in the county alleged. Id. 

 Appellant was indicted for delivery of a controlled substance in the County of Potter
and State of Texas. (Emphasis added). Agent Wittie's uncontradicted testimony
established that he was introduced to appellant at 908 North Washington in Amarillo,
Potter County, Texas. In his brief, appellant argues that it was impossible for the offense
to have occurred at 908 North Washington "as alleged in the indictment." However, the
indictment does not allege a street address and article 13.17 of the Code of Criminal
Procedure does not require the State to allege a particular location within a county. 
Although the State concedes that Wittie's testimony about a specific numerical address
was problematic, Potter County jurors could have reasonably inferred that North
Washington Street is entirely located in Potter County. See generally Bella v. State, 792
S.W.2d 542, 544 (Tex.App.-El Paso 1990, no pet.) (concluding that evidence of a building
at a specified address was sufficient for the jury to conclude from common knowledge that
the location was within the El Paso city limits). Considering that the jury could have
reasonably inferred that the charged offense occurred in Potter County, as alleged in the
indictment, we conclude the State proved venue by a preponderance of the evidence. 
Appellant's six issues are overruled.

 Accordingly, the judgment of the trial court is affirmed.

 Don H. Reavis

 Justice

 

Do not publish.
1. Tex. R. App. P. 47.2(a).



t and conclusions
of law. Woodmark now brings this appeal.
Discussion
          Findings of fact entered in a case tried to the bench have the same force and dignity
as a jury’s verdict upon questions. Anderson v. City of Seven Points, 806 S.W.2d 791, 794
(Tex. 1991); City of Clute v. City of Lake Jackson, 559 S.W.2d 391, 395
(Tex.Civ.App.–Houston [14th Dist. 1977, writ ref’d n.r.e.). However, the findings are not
conclusive when a complete statement of facts appears in the record if the contrary is
established as a matter of law or if there is no evidence to support the findings. Middleton
v. Kawasaki Steel Corp., 687 S.W.2d 42, 44 (Tex.App.–Houston [14th Dist.] 1985), writ
ref’d n.r.e., 699 S.W.2d 199 (Tex. 1985) (per curiam).
          Conclusions of law are reviewed de novo. BMC Software Belgium, N.V. v.
Marchand, 83 S.W.3d 789, 794 (Tex. 2002). We will uphold conclusions of law on appeal
if the judgment can be sustained on any legal theory supported by the evidence. Id. at
794.
           Before we can address Woodmark’s arguments on Statute of Frauds and Statute
of Conveyances, we must first determine whether the document in question was a true
lease of a commercial tenancy or merely a license. Thus, logically, we address
Woodmark’s fifth point of error first by which it alleges the trial court erred in determining
that the contract created a lease. 
Lease or License?
          By Finding of Fact No. 5, the trial court found that Coinamatic is the tenant under
a 1983 lease agreement, and by Conclusion of Law No. 1 determined that the 1983 lease
is a true lease of real property and not a mere license. Woodmark argues the 1983
document created at most, a revocable license. According to Woodmark, the document
fails as a lease because (1) it lacks exclusivity of possession and (2) it does not contain
definable real property.
Exclusivity
          By Finding of Fact No. 19, the trial court found that Coinamatic was in exclusive
possession and use of the laundry room, a defined space with specific boundaries. 
Relying on Brown v. Johnson, 118 Tex. 143, 12 S.W.2d 543 (1929), Woodmark contends
that the 1983 agreement cannot constitute a lease because it does not grant Coinamatic
exclusive possession of the premises. Woodmark misconstrues the holding in Brown. In
Brown the Supreme Court held that one of the essential elements of a valid lease is the
transfer of exclusive possession, not the existence of exclusive possession. Brown, 12
S.W.2d at 545. To create a landlord-tenant relationship, no particular words are
necessary, but it is indispensable that it should appear to have been the intention of one
party to dispossess himself of the right to exclusive possession of the premises and of the
other to possess that right. Id.; Brooks v. Blue Ridge Ins. Co., 677 S.W.2d 646
(Tex.App.–Amarillo 1984, writ refused n.r.e.).
          The November 1983 agreement in question leased “all of the laundry areas on the
premises” to Coinamatic, Inc. and further provided that Coinamatic, Inc. would have the
“right of exclusive installation and operation of all coin-operated laundry equipment” on the
premises. Furthermore, the agreement provided that the owner of the premises, as lessor, 
agreed “not to equip or provide washers or dryers in any other part of the above-described
premises (including without limitation the individual apartment units therein) nor allow any
other party to equip or provide same during the term of this Lease.” From this language,
it is clear that the lessor intended to dispossess himself of the right to exclusive possession
of the premises for purposes of operating a coin-operated laundry, as well as the intent to
grant that right to the lessee.
                                                   Definable Real Property
          Relying on Vallejo v. Pioneer Oil Company, 744 S.W.2d 12 (Tex. 1988), Woodmark
further contends that the “lease” fails to transfer an interest in definable real property. 
Vallejo is distinguishable. In Vallejo, Pioneer Oil Company, as lessee, entered into a
“Lease and Operating Agreement” with Vallejo’s predecessors in interest to install a self
service gasoline operation on certain leased premises, to-wit: a convenience store. Vallejo
contended that the agreement was a lease in name only and not binding upon him as the
new owner of the convenience store. The Supreme Court held that although the
agreement contained many prerequisites of a valid lease, i.e., defined the extent and
boundary of the property involved, provided a definite and agreed term, and fixed a definite
and agreed price and manner of payment, it did not contain a granting clause reflecting an
intention on the part of the lessor to transfer an interest in and possession of the described
property. Id. at 14. The Court concluded that the agreement did not confer upon Pioneer
a right to possess the premises described therein and thus, in the absence of a granting
clause the agreement did not constitute a lease. Id.
          Coinamatic responds that the 1983 document is a true lease. It consists of an
identifiable space–a free standing building with two doors that could be locked when
necessary. Beutell v. United Coin Meter Co., 462 S.W.2d 334 (Tex.Civ.App.–Waco 1970,
writ ref’d n.r.e.). Woodmark Apartments, through Goldberg, and Coinamatic, through
Sternthal, contemplated a lease and referred to themselves as “Lessor” and “Lessee,”
respectively, when entering into the agreement. See id. at 336. More importantly,
paragraph 1 of the agreement at issue is a granting clause conveying from lessor to lessee
“all of the laundry areas on the premises described above . . . .” 
          Additionally, the document defines the leased premises as “all of the laundry areas
on the premises described above” (to-wit: “the property commonly known as the
Woodmark Apartments consisting of 160 rental units located at 1735 Rutland Drive, Austin,
Texas”). See Beutell, 462 S.W.2d at 336 (concluding that the instrument leasing a specific
portion of the premises, namely a laundry room on the property “commonly known as
Hilltop House, 10450 E. Northwest Hiway, Dallas, Texas,” constituted a lease). We
conclude the 1983 document conveyed an interest in definable real property and agree
with the trial court that the November 3, 1983 document constituted a true lease. Having
done so, we may now consider Woodmark’s contentions that the lease violates the Statute
of Frauds and the Statute of Conveyances. 
                                                       Statute of Frauds
          By its first two points of error, Woodmark contends the trial court erred in admitting
the lease because it failed to comply with the Statute of Frauds. We disagree. The Statute
of Frauds requires that a lease of real estate for a term longer than one year be in writing
and be signed by the person to be charged with the promise. Tex. Bus. & Com. Code Ann.
§ 26.01(a) and (b) (Vernon Supp. 2007). At trial, Woodmark objected on various grounds
to admission of the lease for failure to comply with the Statute of Frauds. On appeal,
Woodmark presents numerous arguments in support of its contention:



∙         the “contract” offered as Exhibit No. 1 at trial was not the original and cannot
constitute proof of the contents thereof;
∙         the “contract” offered as Exhibit No. 1 was not complete;
∙         the “contract” is signed by Mark Goldberg and not by Woodmark or by someone
lawfully authorized to do so;
∙         the real property description in the “contract” is not of definable real property as it
provides:
all of the laundry areas on the premises described above . . . 
and contains no legal description of the room;
∙         the real property description in the “contract” is not complete:
the property commonly known as the Woodmark Apartments
consisting of (160) rental units located at 1735 Rutland Drive,
Austin, Texas . . . ;
∙         there was no evidence introduced of an assignment to Woodmark of the obligations
under the “contract; and
∙         there was no evidence introduced of acceptance by Woodmark of the obligations
under the “contract.”
 
          To the extent, if any, that Woodmark’s brief presents anything for review, Sternthal
testified he was unable to locate the original lease. He testified that the duplicate offered
into evidence was a true and correct copy of the lease because he wrote it, executed it,
and made copies of it. Under Rule 1003 of the Texas Rules of Evidence, a duplicate is
admissible unless (1) a question is raised as to the authenticity of the original or (2) in the
circumstances it would be unfair to admit the duplicate in lieu of the original. At trial,
Woodmark did not raise any question on the authenticity of the duplicate or why admission
of a duplicate would be unfair. Woodmark fails to show how the Lease (Plaintiff’s Exhibit
No. 1) and the Memorandum of Lease (Plaintiff’s Exhibit No. 2) do not constitute a written
memorandum of the complete agreement of the parties.
          Woodmark next asserts that neither it nor anyone who was lawfully authorized to
do so signed the lease. It argues that the lease was not assigned nor assumed by it. 
Where a prior owner is bound by a lease, a subsequent purchaser takes the property
subject to the lease and is bound by it. See 2616 South Loop L.L.C. v. Health Source
Home Care, Inc., 201 S.W.3d 349, 355-56 (Tex.App.–Houston [14th Dist.] 2006, no pet.). 
Furthermore, as noted above, the Special Warranty Deed recited that the “[d]eed was
made and accepted expressly subject to the matters set forth in Exhibit B attached hereto
and made a part hereof for all purposes.” Paragraph 8 of Exhibit B provides
“Memorandum of Lease dated November 3, 1983, executed by Coinamatic, Inc. and The
Woodmark Apartments as recorded in Volume 8342, Page 810, Real Property Records of
Travis County, Texas.” Accordingly, Woodmark accepted the property subject to the rights,
if any, arising from that agreement. 
          Woodmark further argues that the lease does not contain a description of definable
leased premises or, in the alternative, that the description is inadequate. A description in
a conveyance is sufficient if it furnishes within itself or by reference to some other existing
writing, the means or data by which the land may be identified with reasonable certainty. 
See Morrow v. Shotwell, 477 S.W.2d 538, 539 (Tex. 1972). See generally Oak Cliff Realty
Group v. Mauzy, 354 S.W.2d 693, 694-95 (Tex.Civ.App.–Fort Worth 1962, writ ref’d n.r.e.)
(noting that “Room or Rooms Numbered 501, on the 5th floor of the building known as
Jefferson Tower” was a sufficient description). 
          The Lease described the leased premises as “all of the laundry areas on the
premises described above” (i.e. “the property commonly known as the Woodmark
Apartments consisting of (160) rental units located at 1735 Rutland Drive, Austin, Texas”). 
This description alone is sufficient to satisfy the Statute of Frauds. See Gates v. Asher,
154 Tex. 538, 280 S.W.2d 247, 248-49 (1955). Furthermore, Exhibit A to the
Memorandum of Lease described “the premises commonly known as the Woodmark
Apartments, Austin, Texas” as follows: 
Rutland Square Two Lot 2-C. As recorded in Book 82, Page 168 of the Plat
Records of the City of Austin, Travis County, Texas. 
Woodmark has failed to show that the lease violated the Statute of Frauds. Points of error
one and two are overruled.
Statute of Conveyances
          By its third and fourth points of error, Woodmark contends the trial court erred in
admitting the lease because it violated the Statute of Conveyances. Again, we disagree. 
The Statute of Conveyances provides that a “conveyance . . . for more than one year, in
land and tenements, must be in writing and must be subscribed and delivered by the
conveyor or by the conveyor’s agent authorized in writing.” Tex. Prop. Code Ann. § 5.021
(Vernon 2004). Woodmark argues that there is no evidence that (1) the lease was
executed by it; (2) the lease was delivered by it; and (3) it assumed and accepted any
obligations under the lease.
          The lease at issue was in writing. The original conveyor, Mark Goldberg, executed
and delivered the lease as “Owner or acting with full authority as owner’s agent, hereinafter
called ‘Lessor’ of the property commonly known as the Woodmark Apartments.” Mindful
of the proposition that a subsequent purchaser takes property subject to a lease or
encumbrance, the Statute of Conveyances does not require that a subsequent purchaser
sign and deliver the conveyance. Woodmark has not demonstrated that the lease violated
the Statute of Conveyances. Points of error three and four are overruled.
Conclusion
          Having overruled all five points of error, the trial court’s judgment is affirmed.
 
                                                                           Patrick A. Pirtle

                                                                                 Justice